USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   3/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSIE NNEBE,<br><br>                  Plaintiff,<br><br>        -against-<br><br>CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION, REIDA BARRY-GRANT, PRINCIPAL, LISETTE OLIVO, ASSISTANT PRINCIPAL, JOHN WERNER, FORMER UNION REP.,<br><br>                  Defendants. | 22-CV-3860 (VEC)<br><br>OPINION AND ORDER |

VALERIE CAPRONI, United States District Judge:

On May 11, 2022, Plaintiff Elsie Nnebe ("Plaintiff"), a Black woman and a tenured special education teacher employed by the New York City Department of Education ("DOE"), proceeding *pro se*, sued the DOE, the City of New York (the "City"), Reida Barry-Grant ("Barry-Grant"), Lisette Olivo ("Olivo"), and John Werner ("Werner"). *See generally* Compl., Dkt. 1 ("Complaint").[1] The initial complaint asserted discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* (the "NYCHRL"). *See generally* Compl. On July 18, 2022, the Court referred this matter to Magistrate Judge Sarah L. Cave for general pretrial management

---

[1] Barry-Grant was the principal and Olivo was the assistant principal of a school to which Plaintiff was assigned, and Werner is a DOE teacher who formerly served as Plaintiff's union representative. *See* Compl., Dkt. 1, ¶¶ 2–3, 15, 21.

1

and for the preparation of reports and recommendations ("R&Rs") on any dispositive motions. *See* Dkt. 27; *see also* 28 U.S.C. § 636(b).

On December 14, 2023, the Court dismissed with prejudice, *inter alia*, Plaintiff's claims against the City and Werner, s*ee* Dkt. 67[2] at 4–5, as well as various other claims against each of the remaining defendants (*i.e.*, the DOE, Barry Grant, and Olivo, and for purposes of this order, the "Defendants"), such that Plaintiff's only remaining claims are as follows: (i) race- and age-based discrimination (under Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL) against the DOE, Barry-Grant, and Olivo based on the DOE's initiation of disciplinary charges against her, and (ii) hostile work environment (under the NYCHRL) against Barry-Grant and Olivo.

Defendants filed a motion for summary judgment as to each of Plaintiff's surviving claims. *See* Dkt. 111. On October 9, 2025, Judge Cave recommended that Defendants' motion for summary judgment be granted in part and denied in part. *See generally* R&R, Dkt. 126. Defendants objected, *see* Def. Obj., Dkt. 129, and Plaintiff responded, *see* Pl. Obj. Opp., Dkt. 131. For the following reasons, Defendants' objections are overruled, and the Court adopts the R&R in full. Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

BACKGROUND

The Court assumes familiarity with the background of this litigation and refers the reader to the R&R for a more detailed procedural history and factual background. *See* R&R at 1–11. The Court summarizes only the facts most pertinent to the instant motion.

---

[2]     *Nnebe v. City of N.Y.*, No. 22-CV-3860 (VEC) (SLC), 2023 WL 8643801, at *3 (S.D.N.Y. Dec. 14, 2023).

Plaintiff is a Black woman born in 1966 who worked for the DOE as a teacher from September 1997 to December 2023.  Dkts. 125-1 ¶¶ 66–68; 122 ¶¶ 5–7, 67.  In November 2007, Plaintiff was assigned to Public School 251Q ("PS 251Q") in Queens.  Dkt. 122 ¶ 4.  In 2019, Barry-Grant served as the principal, and Olivo as the assistant principal, of PS 251Q.  *Id.* ¶¶ 9–10.  Both Barry-Grant and Olivo supervised Plaintiff during her tenure at PS 251Q.  *Id.* ¶ 8; *see also infra* n.11.  Olivo was specifically responsible for conducting school-based investigations of allegations and incidents of teacher misconduct.  *Id.* ¶ 11.

In October 2019, two PS 251Q students informed Olivo of two occasions on which Plaintiff had made non-consensual physical contact with them during class time (the "corporal punishment" or "CP Incidents").  *Id.* ¶ 20; *see also* Dkts. 113-11; 113-12.  Olivo investigated the CP Incidents; she interviewed the students and obtained written statements, including from Plaintiff.  *See* Dkt. 122 ¶¶ 22–25.  Olivo concluded that the CP Incidents were substantiated.  *Id.* ¶ 26.  Plaintiff then filed a complaint against Olivo with the Special Commissioner of Investigation for the New York City School District ("SCI") in which she questioned Olivo's motive and the integrity of the investigation.  Dkt. 122 ¶ 26; *see also* Dkt. 122-12.  The SCI determined that Plaintiff's case against Olivo could not be verified.  *See* Dkt. No. 122-12.  This Court previously dismissed all of Plaintiff's claims based on the CP Incidents.  *See Nnebe v. City of N.Y.*, No. 22-CV-3860 (VEC) (SLC), 2023 WL 8643801, at *3 (S.D.N.Y. Dec. 14, 2023).

One week after the CP Incidents, on October 29, 2019, Plaintiff was assigned to supervise a physical education program on PS 251Q's outdoor playground.  *See* Dkts. 122 ¶ 27; 125-1 ¶¶ 69, 87.  Several hours before the program started, numerous students got into a squabble in an indoor hallway (the "Hallway Incident") after one "bumped into" another and "didn't apologize."  Dkt. 122-10.  The bumpee, believing that the contact was purposeful, "hit"

3

the bumper.  *Id.*  Another student then told the bumpee to "[p]ull" the bumper's hair—advice which, it seems, the bumpee chose to ignore.  *Id.*  The students did not report the Hallway Incident to an adult.  *Id.*

Later in the day, during the outdoor physical education program that Plaintiff was supervising, the students involved in the Hallway Incident (and others) reprised their roles as combatants, involving themselves in a second altercation (the "Playground Incident"); the Playground Incident resulted in ripped pants, a scraped knee, and a welt under the eye of one of the participants.  *See* Dkt. 122-10; 122 ¶¶ 27–28; 113-9 at 222:14–223:6, 224:20–235:9.[3] Plaintiff did not report the Playground Incident to school administrators.  Dkt. 122 ¶ 31.[4]  This event precipitated another investigation, *see* Dkt. 122 ¶¶ 29–35, in which Olivo concluded that Plaintiff had failed adequately to supervise students, *id.* ¶ 36; *see also* Dkt. 113-15 at 1.  Plaintiff "continued teaching and working with the students involved" in the Playground Incident until January 2020, when the DOE "reassigned [her] from" PS 251Q and suspended her ability "to teach[] and work[] any after school programs."  *See* Dkts. 125-1 ¶¶ 88, 92; 122-6.

After Plaintiff was reassigned, the DOE brought disciplinary charges under New York Education Law Section 3020-a ("3020-a" or the "3020-a Charges").  *See* Dkts. 122 ¶ 38; 113-6 at 3–4.  The 3020-a Charges consisted of seven "Specifications," two of which related to the CP

---

[3]    Plaintiff does not dispute the alleged injuries but notes that she "was not provided student statements nor pictures as required during her interview before allegations were substantiated against her."  Dkt. 122 ¶ 28.  A two-minute portion of the altercation was also recorded by a student and posted on Snapchat, a social media site popular among the youths.  *See* Dkt. Nos. 122 ¶ 30; 113-9 at 214:14–25.

[4]    As noted in the R&R, "[t]he parties dispute when the fight started.  Defendants state that the fight among the students 'occurred during [Plaintiff's physical education program] on the school playground[,]' while [Plaintiff] states that the 'fight had started prior to [her program], while under the supervision of three [W]hite teachers [Mr. Werner, Mr. Belmonte, and Mr. Hodgkinson] who did not intervene nor report the conflict to [Plaintiff]."  R&R at 9 n.8 (internal citations omitted); *see also* Dkt. 122 ¶ 31.  The R&R continues: "According to the [investigation] notes, three of the same students involved in the fight during the [playground program] began fighting at approximately 8:00 a.m. in the hallway, before the [playground] program began."  *Id.*

4

Incidents (Specifications 1 and 2) and one of which related to the Playground Incident (Specification 3). *See* Dkts. 122 ¶¶ 38–39; 113-6 at 3–4. Following a hearing in 2022 (during which Plaintiff was represented by a union attorney), a hearing officer found Plaintiff guilty of Specification 2 and partially guilty of Specifications 1 and 3. *See* Dkts. 122 ¶¶ 40–51; 113-6 at 36–39. Plaintiff was suspended without pay for one month. Dkts. 122 ¶¶ 50–51; 125 ¶ 91. The determination also resulted in the State of New York opting not to renew Plaintiff's certificate that would allow her to perform early intervention services with children. *See* Dkts. 125-1 ¶ 92; 122-1 at 179:8–183:20.

Underpinning her hostile work environment claims, Plaintiff alleges that these events and others demonstrate that Olivo "treated [her] differently than her [W]hite coworkers." Dkt. 125-1 ¶ 72. Plaintiff also contends that Olivo: (i) "would complain if Plaintiff needed something . . . but would smile and attend to Plaintiff's [W]hite coworkers[;]" (ii) "erroneously complain[ed] about Plaintiff at meetings[;]" (iii) "blamed [] Plaintiff when two fifth graders stopped taking their ADHD medication during the summer[;]" (iv) required Plaintiff to "consult [with] [] Olivo on things [Plaintiff] normally did prior without consultation," such as "assign[ing] a teacher to write" individualized education programs; and (v) "challenged [Plaintiff's] professional opinion and demeaned her at" Planning and Placement Team ("PPT") meetings, which "embarrassed" Plaintiff. *Id.* ¶¶ 72–73; *see also* Dkt. 122-1 at 55:2–56:20, 65:23–67:4. While Defendants dispute that Olivo was impolite to Plaintiff, they do not contest that "Olivo excluded Plaintiff from [at least one] PPT meeting . . . [held in Plaintiff's classroom] even though [Plaintiff] was a key member and attended outside special education liaison monthly meetings and debriefed to this team." Dkt. No. 125-1 ¶ 74.

Plaintiff brought this lawsuit prior to the 2022 disciplinary hearing but after the DOE had initiated 3020-a Charges against her.  The initial complaint asserted discrimination, retaliation, and hostile work environment claims under Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL against Defendants, the City, and Werner.  Plaintiff amended her complaint in March 2023.  *See* Am. Compl., Dkt. 44.  After several rounds of motions to dismiss, Plaintiff's only remaining claims are as follows: (i) race- and age-based discrimination (under Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL) against the DOE, Barry-Grant, and Olivo based on the DOE's initiation of a 3020-a Charge for Plaintiff's alleged failure to supervise students during the Playground Incident (*i.e.*, Specification 3),[5] and (ii) hostile work environment (under the NYCHRL) against Barry-Grant and Olivo.

The R&R recommends (i) granting Defendants' motion for summary judgment as to Plaintiff's ADEA claim against the DOE and Section 1983 claim against Barry-Grant and Olivio, and (ii) denying summary judgment as to the remainder of Plaintiff's claims.[6]  *See* R&R at 38. For the following reasons, the Court agrees with those recommendations.  Defendants' objections are OVERRULED; the Court ADOPTS the R&R in its entirety.

LEGAL STANDARD

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C). When no timely objections are made to a magistrate judge's report, a district court may adopt the report unless a "clear error on the face of the record" is present.  *Phillips v. Reed Grp., Ltd.*, 955

---

[5]    The Court previously dismissed Plaintiff's discrimination claims based on the 3020-a Charge arising from her use of corporal punishment (*i.e.*, Specifications 1 and 2).  *See Nnebe*, 2023 WL 8643801, at *3.

[6]    To summarize, the R&R recommends that summary judgment be denied as to Plaintiff's "(i) Title VII claim against the DOE, (ii) NYSHRL claim against Barry-Grant and Olivo, (iii) NYCHRL claim against Barry-Grant and Olivo, and (iv) hostile work environment claim under NYCHRL against Barry-Grant and Olivo insofar as those claims are based on the initiation of Specification 3 of the 3020-a Charges against" Plaintiff.  R&R at 38.

F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).  Clear error exists only when the reviewing court is left with a "definite and firm conviction that a mistake has been committed."  *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

Where a party has made specific, written objections to the R&R, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (citing 28 U.S.C. § 636(b)(1)).  To warrant de novo review, the objections must be "specific" and "address only those portions of the proposed findings to which the party objects."  *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011).  If "a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error."  *Id.*; *see also, e.g.*, *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (collecting cases); *O'Callaghan v. N.Y. Stock Exch.*, No. 12-CV-7247 (AJN) (SN), 2013 WL 3984887, at *1 (S.D.N.Y. Aug. 2, 2013) (same), *aff'd*, 563 F. App'x 11 (2d Cir. 2014).

Submissions by *pro se* litigants are construed more leniently than submissions by lawyers and are interpreted to raise the strongest arguments they suggest.  *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  Nevertheless, the "application of this different standard does not relieve plaintiff of h[er] duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).

7

<u>DISCUSSION</u>

**I.      Defendants' Motion for Summary Judgment on Plaintiff's Claims Under the ADEA and Section 1983 Is Granted**

Judge Cave recommends dismissing Plaintiff's ADEA claim against the DOE and Section 1983 Claim against Barry-Grant and Olivo. *See* R&R at 25, 30–33. Neither party objects to Judge Cave's recommendations as to these claims. As such, the Court reviews her recommendation for clear error. *See Phillips*, 955 F. Supp. 2d at 211 (quoting *Nelson*, 618 F. Supp. at 1189). Upon careful review, the Court finds no clear error in Judge Cave's recommendation that the Court find that there are no issues of material fact as to Plaintiff's claims for relief under either the ADEA or Section 1983, and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment as to those claims is granted.

**II.     Defendants' Motion for Summary Judgment on Plaintiff's Claims Under Title VII, the NYSHRL, and the NYCHRL Is Denied**

Judge Cave recommends denying Defendants' motion for summary judgment as to Plaintiff's Title VII claim (against the DOE), and NYSHRL and NYCHRL claims (against Barry-Grant and Olivo). *See* R&R at 24, 29–30, 33. Separately, Judge Cave recommends denying Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim under NYCHRL against Barry-Grant and Olivo. *See id.* at 37.

Discrimination claims brought pursuant to Title VII, the NYSHRL, and the NYCHRL[7] are analyzed using the "familiar burden-shifting framework set forth in *McDonnell Douglas*

---

[7] The NYCHRL is construed more liberally than its federal and state counterparts, and employers are liable under the NYCHRL "if [they] w[ere] motivated *at least in part* by an impermissible motive." *Kia Song Tang v. Glocap Search LLC*, No. 14-CV-1108 (JMF), 2015 WL 1344788, at *5 (S.D.N.Y. Mar. 24, 2015) (quoting *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (2d Dep't 2013)). Even so, "[C]ourts in this Circuit typically apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework," *Penzo v. Consol. Edison Co. of N.Y., Inc.*, No. 19-CV-07478 (MKV), 2024 WL 3824072, at *3 n.6 (S.D.N.Y. Aug. 15, 2024), and will dismiss a claim under the NYCHRL "only if no jury could find [the] defendant liable under any

*Corp. v. Green*, 411 U.S. 792, 802–03 (1973).”  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24-1085-CV, 2025 WL 704278, at *2 (2d Cir. Mar. 5, 2025) (summary order) (“NYSHRL and NYCHRL claims are both analyzed using the three-step burden shifting framework established by the Supreme Court in *McDonnell Douglas*[.]” (citing *Furfero v. St. John's Univ.*, 941 N.Y.S.2d 639, 641 (2d Dep't 2012) and *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 30–31 (1st Dep't 2012))).  “Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination.”  *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 307–08 (2d Cir. 2015).

To establish a prima facie case of discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).  For purposes of their summary judgment motion, Defendants dispute that Plaintiff can establish the fourth element of the prima facie case and argue that, even if she could, Defendants

---

of the evidentiary routes—*McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof,” *Robinson v. De Niro*, 739 F. Supp. 3d 33, 102 (S.D.N.Y. 2023) (quoting *Sanderson-Burgess v. City of N.Y.*, 102 N.Y.S.3d 678, 680 (2d Dep't 2019)).

have offered legitimate, non-discriminatory, non-pretextual reasons for bringing 3020-a Charges against her. *See* R&R at 17.

For the Title VII, NYSHRL, and NYCHRL claims, Judge Cave's recommendation is predicated on her finding that Plaintiff has demonstrated that "genuine issues of material fact exist concerning whether the DOE's initiation of Specification 3 of the 3020-a Charges against her gives rise to an inference of discrimination based on her race or age." *Id.* at 22. Although the DOE proffered a legitimate, non-discriminatory reason for bringing Specification 3, *see id.* at 22–23, Judge Cave nonetheless concluded that Plaintiff had met her burden of establishing a question of fact on pretext, finding "that genuine issues of material fact" exist as to "whether [Plaintiff] was treated more harshly than younger White teachers, and whether DOE's articulated reason for bringing specification 3 of the 3020-a charges against her was pretextual," *id.* at 24.

Defendants argue that Judge Cave erred in her review of the evidence, which resulted in the erroneous conclusion that genuine issues of material fact exist here. *See generally* Def. Obj. at 2–18.[8] Specifically, Defendants claim that Judge Cave "erred in determining that at least some of Plaintiff's contentions are supported by admissible evidence, and therefore raise genuine issues of material fact regarding whether Plaintiff was treated worse than younger White teachers who also failed to supervise students but did not face disciplinary charges." Def. Obj. at 5. After de novo review, the Court disagrees.

---

[8] Defendants identify ten "objections to the findings that Magistrate Judge Cave made and/or facts that she overlooked in making" her recommendation. Def. Obj. at 2–3. Many of these objections simply reraise arguments that Defendants made in their original summary judgment briefing, and which Judge Cave has already considered and rejected. As such, various of Defendants' objections are improper and do not warrant de novo review. *See, e.g.*, *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011). Nonetheless, given Defendants' contention that Judge Cave "misread and misquoted" various pieces of the evidentiary record, *see* Def. Obj. at 3, and because a handful of Defendants' specific, appropriately-raised objections are inextricably intertwined with Defendants' ultimate position that the evidence does not support Judge Cave's recommendation, the Court will conduct a de novo review as to each of the categories of objections that Defendants have raised.

Regarding Specification 3 (related to the Playground Incident), Plaintiff offers three pieces of comparator evidence that, she alleges, tend to give rise to an inference of discriminatory intent:

- "White teachers (Mr. Hodgkinson, Mr. Werner, Mr. Belmonte) failed to supervise these same students [who were involved in the Playground Incident] earlier the same day when the conflict began."

- "Other White teachers assigned to the hallway [before the Playground Incident] where the [Hallway Incident] escalated were never questioned or disciplined."

- "Students fought in Mr. Hodgkinson's class on another day, but Mr. Hodgkinson was not charged for failing to supervise the class.  He was not even disciplined, despite Olivo's text admitting 'D and K got into a fight with Mr. H . . .'  The students got suspended as usual, but the teacher did not get charged because he is White."

Pl. MSJ Opp., Dkt. 121, at 12–13 (emphases omitted).

Although Plaintiff's purported comparator evidence lacks citations to the factual record, "as a *pro se* non-moving party," Judge Cave, as she was required to do, "afford[ed] [Plaintiff] 'special solicitude'" and "'conduct[ed] an assiduous review of the record'" before determining that "the facts [Plaintiff] asserts are, in fact, supported by admissible evidence."  R&R at 18–19 (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), and *Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454, 457 n.2 (S.D.N.Y. 2023)).

As to Plaintiff's first piece of comparator evidence, Defendants argue that it supports "a conclusion that no physical fight occurred amongst the students in the morning," and thus, there can be no reasonable conclusion that Plaintiff's purported comparators "engage[d] in conduct of comparable serious[ness] as Plaintiff."  Def. Obj. at 7.  This is flatly contradicted by the record. According to the "series of events" to which "[a]ll students agreed," one student physically struck another after he was accidentally bumped and did not receive an apology.  *See* Dkt. 122-10.  Even if arguably less severe than what would transpire on the playground later that day,

there was some sort of physical altercation in the hallway prior to the Playground Incident. Defendants' assertion that the investigation notes "do[] not in any way state or describe that a physical fight occurred at all" is, quite simply, wrong. *See* Def. Obj. at 7. To the extent Defendants did not bring 3020-a charges against the teachers responsible for supervising the students fighting during the Hallway Incident, Plaintiff's proffered comparator evidence is clearly relevant. It is also sufficient to support the Court's finding that genuine issues of material fact exist as to Plaintiff's discrimination claims; namely, whether the teachers tasked with supervising the students involved in the Hallway Incident are adequate comparators for Plaintiff.

Defendants' separate argument—that Plaintiff has failed to proffer evidence demonstrating that the Hallway Incident occurred "in the presence of any teachers"—is not compelling either. *See* Def. Obj. at 7. Plaintiff testified that Mr. Belmonte and Mr. Werner, "both younger White teachers," were responsible for supervising the students in the morning before the Playground Incident but did not intervene (or were altogether unaware) of the fight in the hallway. *See* Dkt. 113-1 at 146:14–20. A student-witness statement lends some credence to the notion that the fight may have occurred *in* "Mr. H's room." *See* Dkt. 122-9. In all events, there is enough evidence in the record, viewed in the light most favorable to Plaintiff, from which the trier of fact could conclude (i) that a younger, White teacher—whether Mr. Hodgkinson, Mr. Belmonte, or Mr. Werner—was responsible for monitoring students in the hallway before "breakfast time," *see* Dkt. 122-10, (ii) that the teacher was derelict in supervising the children, permitting the onset of an altercation (with both verbal and physical elements), and (iii) that the teacher was not investigated nor the recipient of 3020-a charges.[9]

---

[9]     Put differently, it is implausible for the Court to conclude, based on the evidentiary record in front of it, that these elementary-aged students were, by design, without supervision and left to their own devices on the morning of the Playground Incident. Whether a jury will reach the same conclusion is yet to be seen. But this alone tends to demonstrate, at the very least, that questions of fact exist.

Defendants also take issue with Judge Cave's willingness to credit Plaintiff's second assertion (also regarding the Hallway Incident) as being supported by the investigation hearing officer's notes. *See* Def. Obj. at 11–12. The R&R states: "We also note that the [investigation Decision & Order] recorded that [Plaintiff] 'was also critical of [] Olivo's conduct of the investigation, noting that [] Olivo did not interview Mr. Belmonte about" the Hallway Incident. R&R at 20. Defendants argue that the notation to which Judge Cave referred "related to Specification 2, the corporal punishment incident," not to Specification 3, and thus Judge Cave "erroneously concluded that the statement . . . about a different incident was admissible evidence that supports Plaintiff's assertion that Mr. Belmonte and Mr. Werner failed to supervise the students in the morning interaction that precipitated the Playground Incident[.]" Def. Obj. at 11–12.

Defendants are correct that this minor excerpt from the R&R misstates the record. As Defendants suggest, the note cited in the R&R does, in fact, relate to Specification 2, which involved an incident distinct from the Hallway Incident. Thus, the cited material does not constitute evidence tending to support Plaintiff's assertion that Mr. Belmonte and Mr. Werner failed to supervise students on the morning of the Playground Incident. That said, the Court's de novo review of the record confirms that Judge Cave's ultimate conclusion—*i.e.*, that there exists admissible evidence to support Plaintiff's assertion that Mr. Belmonte and Mr. Werner failed to supervise students but were not investigated—is correct. In relation to Specification 3, the investigation notes repeat a substantively identical sentiment to that to which Judge Cave referenced in the R&R: Plaintiff criticized Olivo's investigation of the Playground Incident because "the altercation arose from events that occurred earlier in the morning," yet "[Plaintiff] was the only pedagogue who was interviewed by" Olivo. *See* Dkt. 113-6 at 23. This, when

13

considered alongside the evidence previously discussed, is sufficient to conclude that there is a question of fact for the jury whether younger, White teachers who failed to supervise students who engaged in a physical altercation were treated differently than Plaintiff.

As to Plaintiff's third piece of comparator evidence (related to a separate incident involving Mr. Hodgkinson), Plaintiff cites a text exchange between Barry-Grant and Olivo in which Olivo discussed a student altercation in Mr. Hodgkinson's classroom that took place on a different day than the Playground Incident. *See* R&R at 19–20 (citing Dkt. 122-20). In the series of messages, Olivo writes that "d and K got into a fight with Mr. H . . . K admitted he waited until after lunch to retaliate against d then gets upset when d slaps him." Dkt. 122-20; *see also* Dkt. 125-1 ¶ 89. Defendants quibble with the R&R's characterization of the messages, arguing that they suggest that students got into a fight *with* Mr. Hodgkinson, not a physical altercation *in* his classroom. *See* Def. Obj. at 10. Thus, Defendants contend, the text messages cannot "serve as admissible evidence supporting Plaintiff's assertion that Mr. Hodgkinson failed to supervise his students."

The Court disagrees. At best, Olivo's messages are ambiguous, given that they suggest both (i) that students got into a fight *with* Mr. Hodgkinson, but also (ii) that the students engaged in a slap fight with each other. *See* Dkt. 122-20. It is not necessary for the Court to pin down the precise series of events because the text messages are admissible only as "'non-hearsay . . . for their effect on [Barry-Grant and Olivo],' specifically whether Barry-Grant and Olivo investigated [Mr. Hodgkinson's] purported failure to supervise his students or brought 3020-a charges against him (which they did not)." R&R at 20 (quoting *Chislett v. N.Y.C. Dep't of Educ.*, No. 24-972-CV, 2025 WL 2725669, at *8 n.7 (2d Cir. Sept. 25, 2025)). Indeed, the record suggests, at least to some degree, that Olivo herself *believed* that the physical altercation took place *between* the

14

students and occurred *in* Mr. Hodgkinson's classroom (or, at least, under his supervision).  In her deposition, Olivo admitted that she "kn[ew] that there was an incident," as "[s]tudents do have altercations," but she nonetheless could not "speak to what [Mr. Hodgkinson] did in terms of action."  Dkt. 122-2 at 340:19–241:13.

It is not helpful for Defendants that Olivo admits to not "hav[ing] full clarity" on the incident involving Mr. Hodgkinson.  Dkt. 122-2 at 341:3–9; *see* Def. Obj. at 10–11.  Olivo's ignorance is precisely what makes the evidence useful to Plaintiff.  The text messages demonstrate that Olivo possessed contemporaneous knowledge about a physical altercation between students that may have occurred in Mr. Hodgkinson's classroom and that resulted in 2- and 3-day "removals" of the students involved.  *See* Dkt. 122-20.  And yet, although armed with this information, she did not investigate the incident, nor did the DOE bring 3020-a charges against Mr. Hodgkinson.  This set of evidence is admissible, and the circumstances plainly serve to bolster Plaintiff's comparator narrative.

Next, Defendants argue that Plaintiff has not met her burden of establishing that Defendants' adverse employment action (*i.e.*, the initiation of Specification 3) was pretextual because Specification 3 was "inextricably intertwined" with the charges related to the CP Incidents (*i.e.*, Specifications 1 and 2), and Plaintiff has failed to "point to any evidence demonstrating that the younger White teachers who failed to supervise their students who engaged in a fight" were,  "within the same week[,] . . . accused of and found to have committed two instances of corporal punishment."  Def. Obj. at 15 (quoting Def. MSJ Br., Dkt. 114 at 17).

Inherent in Defendants' argument is a request for the Court to determine conclusively that the "DOE would *not* have brought Specification 3 against [Plaintiff] *if* either (i) the Playground Incident had not involved a reported injury to a student, or (ii) [Plaintiff's] failure to

15

supervise her students was her first offense, or (iii) [Plaintiff] reported the Playground Incident to administration." R&R at 21 (emphases added). But this "argument turns on a disputed issue of fact—the reasons why DOE initiates (or does not initiate) disciplinary charges against teachers." *Id.*

Although not framed in these terms, Defendants are asking the Court to assess and resolve questions of fact that weigh on the sufficiency of the evidence Plaintiff has offered in support of her discrimination claims. This is simply not the role of the Court at the summary judgment stage. A jury may well agree with Defendants that Plaintiff's purported comparators are not similarly situated because, unlike Plaintiff, they have not "committed a similar combination of multiple serious acts within the same time frame." Def. Obj. at 17. But the sufficiency of Plaintiff's proffered comparator evidence, including the ultimate determination whether the employees are similarly situated, is a question of fact that must be resolved by a jury at trial. *See, e.g.*, *Feingold*, 366 F.3d at 154 ("Accordingly, we find that whether or not the non-disciplined [individuals] were similarly situated is a matter of factual dispute which is best resolved by a finder-of-fact, and not on summary judgment."); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury."); *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 239 (E.D.N.Y. 2015) ("[T]hough the [] Defendants have set forth evidence detailing long-running concerns with [Plaintiff]'s conduct, . . . [Plaintiff] has sufficiently rebutted their evidence to create a genuine issue of material fact on the issue of pretext. She has set forth specific facts that call into question the [Defendants'] legitimate, non-discriminatory evidence. While a jury might credit all of this proffered evidence, some of it, or none at all, that is a question left for the jury to decide at trial." (cleaned up)). Likewise, whether the DOE's decision

16

to initiate Specification 3 against Plaintiff can be disaggregated from Plaintiff's other charged misconduct—*i.e.*, a determination as to the DOE's true rationale for bringing the failure to supervise claim—is, fundamentally, a question of fact best left to the jury.[10]

In short, for the foregoing reasons, genuine issues of material fact exist as to Plaintiff's comparator evidence sufficient to preclude summary judgment. Plaintiff's discrimination claims under Title VII, the NYSHRL, and the NYCHRL,[11] therefore, survive Defendants' motion for summary judgment. For largely the same reasons, the factual issues that preclude summary judgment as to Plaintiff's Title VII claim also preclude summary judgment on Plaintiff's hostile work environment claim under the NYCHRL (with respect to initiating Specification 3 of the 3020-a Charges). *See* R&R at 37.

Finally, Defendants repeat, almost verbatim, their argument that Plaintiff's NYSHRL claims against Barry-Grant and Olivo must be dismissed as a matter of law "because these individuals are not considered 'employers' under the statute." Def. Obj. at 18; *see also* Def. MSJ Br. at 18.[12] Defendants are correct that Barry-Grant and Olivo are not "employers" as defined by the NYSHRL. *See, e.g.*, *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329–30 (S.D.N.Y. 2024). That does not mean, however, that they cannot be held liable pursuant to an aiding-and-

---

[10]    On this point, Defendants rehash a version of their comparator argument, contending that Judge Cave "misread the evidence and ignored that Plaintiff . . . did not demonstrate that the alleged comparators were similarly situated to her in all material aspects and that they engaged in conduct of comparable seriousness." Def. Obj. at 16. As discussed, the Court disagrees that the record is as unambiguous as Defendants suggest.

[11]    The NYCHRL is broader than its federal or state counterparts, *see supra* n.8; as such, it must be reviewed "independently from and 'more liberally'" than Title VII and the NYSHRL. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). Because the protections afforded by the NYCHRL are at least as protective as those guaranteed by the federal and state antidiscrimination laws, a plaintiff who defeats summary judgment as to claims under Title VII or the NYSHRL necessarily does so under New York City law as well. Having found that there is sufficient evidence in the record to support Plaintiff's Title VII and NYSHRL claims, the Court will not separately assess the adequacy of Plaintiff's NYCHRL claim, which is predicated on the same set of facts.

[12]    Judge Cave did not explicitly address this argument in the R&R.

17

abetting theory. *See, e.g.*, *Baptiste v. City Univ. of N.Y.*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023) ("[Individual defendants] can be held liable under the state statute only on an aider-and-abettor theory."); *Bueno v. Eurostars Hotel Co., S.L.*, No. 21-CV-535 (JGK), 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) ("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct."). As such, Plaintiff may pursue her discrimination claim under the NYSHRL against Barry-Grant and Olivo on that theory.[13] Defendants' request that the NYSHRL claim against Barry-Grant and Olivo be dismissed as a matter of law is, therefore, denied.

CONCLUSION

For the reasons set forth herein, Defendants' objections to the R&R are OVERRULED, and the R&R is ADOPTED in full. Defendants' motion for summary judgment, Dkt. 111, is GRANTED in part and DENIED in part as follows:

- GRANTED as to Plaintiff's (i) ADEA claim against the DOE and (ii) Section 1983 claim against Barry-Grant and Olivo.

- DENIED as to Plaintiff's (i) Title VII claim against the DOE; (ii) NYSHRL claim against Barry-Grant and Olivo; (iii) NYCHRL claim against Barry-Grant and Olivo; and (iv) hostile work environment claim under NYCHRL against Barry-Grant and Olivo, insofar as those claims are based on the initiation of Specification 3 of the 3020-a Charges against Plaintiff.

It is further ORDERED that the parties meet and confer and, not later than **Thursday, April 9, 2026**, submit to the Court, via ECF, a letter (i) proposing three (3) mutually acceptable trial dates between May 15, 2026, and July 24, 2026; and (ii) informing the Court whether the

---

[13] Although not necessary to establish employee liability under the NYSHRL, the Court notes that Defendants do not dispute that Barry-Grant and Olivo exercised supervisory (and, in Olivo's case, investigatory) authority over Plaintiff during her relevant tenure at PS 251Q. *See, e.g.*, Dkts. 122 ¶ 8; 113-9 at 55:24–56:9 (Olivo deposition transcript); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) ("To be liable under [the NYSHRL], an individual employee need not have supervisory or hiring and firing power, but must have 'actually participated in the conduct giving rise to the claim.'" (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)).

parties request a referral for a settlement conference with Judge Cave.  Separately, Plaintiff must notify the Court not later than April 9, 2026, whether she would like the Court to attempt to locate pro bono counsel for her for trial.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 111.


SO ORDERED.


Dated:    March 26, 2026
          New York, New York

_____
VALERIE CAPRONI
United States District Judge